**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| WILLIAM CLYDE PARKS AND | § | |
| SUSAN MINDY PARKS | § | |
|     Appellees, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3524 |
| | § | |
| BUCKEYE RETIREMENT COMPANY, | § | Appeal from Bankruptcy Cause No. |
| L.L.C., | § | 05-31627-H2-7, United States Bankruptcy |
| | § | Court for the Southern District of Texas |
|     Appellant. | § | |

**MEMORANDUM AND OPINION**

Buckeye Retirement Company, L.L.C. appeals the bankruptcy court's order overruling its objection to the homestead exemption claim of debtors William Clyde Parks and Susan Mindy Parks and granting the debtors' motion to avoid Buckeye's judicial lien on the property. Based on a careful review of the briefs, the record, and the applicable law, this court affirms the bankruptcy court's order. The reasons are explained below.

**I.    Background**

Most of the facts material to this appeal are undisputed. In 1998, William and Susan Parks purchased four contiguous, adjacent lots from a single seller. One of the four lots, designated as Lots 69 A and B, had a house on it. The Parks purchased these lots—referred to in the bankruptcy court's opinion as the Residence Lots—using a Veterans' Administration loan. Because that loan could not be used for the three adjacent, contiguous

tracts, Lots 65, 66, and 70—referred to in the bankruptcy court's opinion as the Remaining Lots—they were financed separately by the seller. All the lots were fenced as a single piece of property, looked like a single tract, and used as a single tract, despite the legal description as four tracts. The bankruptcy court found that "even though legally the property was described in separate tracts," it "was virtually indistinguishable from a single tract" of land, and the record supports that finding.

The Parks family lived in the house on the Residence Lots and used the adjacent Remaining Lots (lots 65, 66, and 70) for several purposes, including to raise horses. The Remaining Lots featured a barn, pond, and small boat house. The bankruptcy court found that the Parks family occupied the entire property, both the Residence and the Remaining Lots, as their residence and homestead from the 1998 purchase until August 1, 2003. The tax rolls through 2003 showed entitlement to a homestead exemption for the entire property. The Parks did not record a homestead exemption during the relevant period.[1]

Beginning in 1999, the Parks family encountered a series of reversals. Both William and Susan Parks lost their jobs, although William Parks later secured another job. In October 2002, one of their daughters suffered severe injuries that had lasting effects. By 2003, the Parks were fourteen months delinquent on their residential mortgage with the VA. In August 2003, the mortgage lender foreclosed on the residential part of the property and the Parks family was evicted. The Remaining Lots were not subject to the foreclosure. The Parks

---

[1] In May 2005, Parks attempted to file an affidavit of homestead on the property in Waller County, Texas. The property is in Harris County, Texas.

family rented a house but regularly used the adjacent contiguous Remaining Lots for recreational purposes and to raise horses. The Remaining Lots at issue had no habitable structure, utilities, or water. To live on those tracts, the Parks family would have to build a residence.

In the bankruptcy court proceeding, Susan Parks testified that shortly after the foreclosure and eviction, she and her husband tried to obtain financing to build a residence on the Remaining Lots. They were unable to do so because of the foreclosure. Susan Parks testified that in 2003 and 2004, she and her husband paid off the lien on the Remaining Lots to try to use that property to obtain financing to build a house. That effort was also unsuccessful. Having exhausted their options to build a residence on the Remaining Lots, the Parks family put the land up for sale on July 1, 2004, to obtain funds to buy another homestead. During this period, the Parks family was living in the rental house under a long-term lease, which expired on July 31, 2005 but continued on a month-to-month basis.

The Parks family had at some earlier point borrowed money and issued or guaranteed a promissory note to Compass Bank. Although the record is unclear, it appears that the note or guarantee was in 1997. Buckeye purchased this note from Compass Bank and in 2004, sued the debtors in Texas state court to collect. On September 7, 2004, Buckeye obtained a judgment for $319,237.85 plus pre- and post-judgment interest. Buckeye abstracted the judgment in the real property records.

In 2004, William and Susan Parks received an offer to purchase the Remaining Lots. A title search revealed the abstracted judgment and the sale did not close. In late 2004 or

early 2005, Susan Parks called Buckeye and asked it to release the lien. Buckeye refused to do so. A Buckeye representative testified that Susan Parks stated that she wanted to use the proceeds from selling the Remaining Lots to pay her daughter's medical expenses. Susan Parks testified that she never made such a statement and would not have done so because insurance covered the child's medical bills.² Susan Parks testified that she and her husband intended to use the proceeds to purchase a new homestead, but that they did not obtain a new homestead and would move back to the property if they could built a home on it. The bankruptcy court credited Susan Parks's testimony.

William and Susan Parks filed for bankruptcy on January 31, 2005. They claimed that the Remaining Lots were protected under the rural homestead exemption provided by Texas law. Buckeye objected to the exemption. The debtors moved to avoid Buckeye's lien under section 522(f) of the Bankruptcy Code. The issue was whether the three Remaining Lots were exempt homestead property under Texas state law. The parties stipulated that if the property was exempt, it was a rural homestead, the tracts were contiguous, and the acreage did not exceed the maximum permitted by Texas law. The bankruptcy court found that the property met the criteria for the homestead exemption. The issue was whether the debtors had lost the exemption by abandoning the property. The bankruptcy court held a hearing at which Susan Parks, William Parks, and Ray Diamond, an account officer at Buckeye, testified, then entered findings of fact and conclusions of law. The bankruptcy court found

---

² The child's injury resulted from an accident at a school function. Susan Parks testified that the school's insurance policy and the family health insurance policy covered the medical costs.

that William and Susan Parks had continued to use the Remaining Lots in much the same way that they used it when they lived on the Residence Lots; that they did not intend to abandon the property; that they intended to return to the land if they could obtain financing to rebuild; and that they had no other homestead. The bankruptcy court denied Buckeye's objection to the homestead exemption and granted the motion to avoid Buckeye's judicial lien. Buckeye timely appealed.

**II.     Analysis**

In reviewing a bankruptcy court decision, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal. *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992). A bankruptcy court's findings of fact are reviewed for clear error, with proper deference to that court's opportunity to make credibility determinations. FED. R. BANKR. P. 8013; *In re McDaniel*, 70 F.3d 841, 842–43 (5th Cir. 1995). A finding of fact is clearly erroneous if, after review of all the evidence, the court is left with a firm and definite conviction that the bankruptcy court erred. *In re McDaniel*, 70 F.3d at 843. Legal conclusions are reviewed *de novo*. *Id.*; *In re Herby's Foods, Inc.*, 2 F.3d 128, 130 (5th Cir. 1993).

Article 16, section 50(a) of the Texas constitution provides that the homestead of a family is protected from forced sale or the payment of debts except for certain enumerated encumbrances. TEX. CONST. art. 16, § 50. Under the Texas constitution, judgment liens on homestead property generally are invalid, but will attach if the homestead ceases to be homestead property. *See United States v. Johnson*, 160 F.3d 1061, 1064 (5th Cir. 1996). A

5

judgment lien that has been properly abstracted cannot attach to a homestead as long as the property remains homestead. *The Cadle Co. v. Harvey*, 46 S.W.3d 282, 285 (Tex. App. – Fort Worth 2001, pet. denied). "A judgment debtor may sell it and pass title free of any judgment lien, and the purchaser may assert that title against the judgment creditor." *Wilcox*, 103 S.W.3d at 473 (quoting *Harvey*, 46 S.W.3d at 285). If the judgment debtor abandons the homestead property, however, the judgment lien attaches. A homestead exemption can be lost by abandonment. *Id.*; *Coury v. Prot*, 85 F.3d 244, 253 (5th Cir. 1996). Abandonment of a homestead is a question of fact to be determined in each case from the entire evidence before the court. *See United States v. Johnson*, 160 F.3d at 1064. A homestead exemption may be lost or abandoned by a removal from the premises under circumstances clearly indicating that the removal is not merely temporary. A homestead claimant is not required to remain on the premises at all times and does not necessarily lose, forfeit, or abandon his homestead rights merely by removing or being absent from the premises when the absence is temporary. *Coury v. Prot*, 85 F.3d at 253. Generally, to constitute an abandonment of a homestead by a removal from the premises, the removal must be accompanied by the intent never to return to occupy the premises as a homestead. *Id.*

The burden to establish that property is a homestead is on the party asserting the protection. *Burk Royalty Co. v. Riley*, 475 S.W.2d 566, 568 (Tex. 1972); After the homestead character of property is established, the burden of showing abandonment is on the creditor. *Wilcox*, 103 S.W.3d at 472; *Lifemark*, 655 S.W.2d at 314. A homestead is

presumed to exist "until its termination is proved." *Wilcox*, 103 S.W.3d at 472–73 (citing *Sullivan v. Barnett*, 471 S.W.2d 39, 43 (Tex. 1971) (additional citations omitted)).

The two issues before the bankruptcy court and this court are: (1) whether the Remaining Lots were a homestead; and (2) if so, whether it was abandoned. Buckeye argues that the bankruptcy court clearly erred in finding that the three undeveloped Remaining Lots were a homestead. The parties do not dispute, however, that except for the purchase financing, these lots and the Residence Lots were purchased in a single transaction, were fenced as a single lot, looked like a single lot, and were used as a single lot. The tax rolls treated the entire property as a homestead. This court agrees with the bankruptcy court that the entire property, including the three Remaining Lots at issue, was a homestead.

Buckeye contends that the bankruptcy court erred in rejecting Buckeye's alternative claim that the after August 2003, when the Parks family was evicted and the Residence Lots foreclosed, the homestead was abandoned. Texas courts have held that once a homestead right attaches to property, "that right survives partition and attaches to the property received in partition." *J.R. Watkins Co. v. Dawson*, 145 S.W.2d 901, 905 (Tex. App. – El Paso 1940, no writ). The issue is abandonment. The party seeking to prove abandonment must prove both "cessation or discontinuance of use of the property as a homestead" and "the intent to permanently abandon the homestead." *Montague*, 70 S.W.3d at 248; *Womack v. Redden*, 846 S.W.2d 5, 7 (Tex. App. – Texarkana 1992, writ denied). "Intention alone is not sufficient to constitute abandonment; overt acts of preparation consistent with such intention are required." *McKee v. Wilson*, 174 S.W.3d 842, 844 (Tex. App. – Waco 2005, no writ) (citing

7

*Cheswick v. Freeman*, 287 S.W.2d 171, 173 (Tex. 1956)). "[M]ere removal from premises occupied as a homestead, even to another state, does not constitute an abandonment so long as no other homestead is acquired and there remains at all times an intention to return and again occupy the property as the family residence." *W. Tex. State Bank of Snyder v. Helms*, 326 S.W.2d 47, 49 (Tex. App. – Eastland 1959, no writ) (citing *City Nat'l Bank of Bryan v. Walker*, 111 S.W.2d 350 (Tex. App. – Waco 1937, writ dismissed)); *Coury v. Prot*, 85 F.3d at 253;

     In *McKee*, the court rejected a creditor's claim that a family had abandoned its previous homestead by purchasing land and beginning construction on a new house that the family intended to use as its homestead. The court noted that "even if there is preparation" to abandon one homestead in favor of a new one, the existing homestead remains valid until the occupant actually acquires a second homestead. *Id.* If a debtor acquires a second homestead before selling the first homestead, the first homestead is deemed abandoned and is no longer exempt from seizure, *see England v. Federal Deposit Ins. Corp.*, 975 F.2d 1168, 1175 (5th Cir. 1992), because proof that a new homestead has been acquired establishes abandonment as a matter of law, *Johnson*, 160 F.3d at 1064. But even if a debtor plans to sell a homestead and lists it for sale, the debtor retains the property as his homestead until he sells it. *In re Baker*, 307 B.R. 860 (Bankr. N.D. Tex. 2003). A contract for sale of land that is subject to the homestead exemption does not divest the land of that exemption because "[a]n intention or attempt to sell a homestead does not amount to an abandonment as long as the homestead claimants retain possession and have no intent to abandon *unless the sale materializes*." *Id.*

at 864 (quoting *Sullivan v. Barrett*, 471 S.W.2d 39, 43 (Tex. 1971) (emphasis and alteration in original). listing a homestead for sale with a real estate agent or an executory contract to sell a homestead does not conclusively show abandonment. *Id*. This rule is consistent with the rule that a judgment lien is no impediment to a valid sale by the parties asserting the homestead right to a purchaser, and that the purchaser, by acquiring the property when the homestead right existed, would receive it unaffected by the judgment lien. *See Johnson*, 160 F.3d at 1064. This rule is also consistent with the rule that if the debtor retains the property as his homestead until he actually sells it, those proceeds are exempt for six months and after that period. *See* TEX. PROP. CODE § 41.001(c).

Susan Parks testified about the steps her family had taken to try to build a residence on the Remaining Lots after they were evicted from the Residence Lots. She testified that if the family could secure financing, they intended to build a residence on the Remaining Lots. Although the Remaining Lots were put up for sale, no sale had been executed, no new homestead acquired, and the Parks family continued to use the Remaining Lots. The bankruptcy judge credited her testimony and rejected contradictory testimony that suggested the Parks family intended to sell the property to use the proceeds for their daughter's medical expenses, not to obtain financing to build a home.

Buckeye vigorously argues that the Parks family did not have any intention of using these undeveloped parcels that were offered for sale as a homestead. Buckeye attempts to use the tests for determining whether a homestead exists in the first place to support its claim that the Parkses have abandoned the homestead. Under Texas law, "[w]here no homestead

dedicated by actual occupancy exists, effect may be given to ownership, intention and preparation to use for a home." *McKee*, 174 S.W.3d at 844.  The contrapositive is not true: once a homestead is established, removal from the homestead alone does not defeat the homestead protection.  Removal from the premises will be an abandonment of a homestead only if it is accompanied by the intent never to return to occupy the premises as a homestead. *Coury*, 85 F.3d at 253 .  After their eviction from the Residence Lots, the Parks family rented another home—even using month-to-month leases for a period—and did not acquire another homestead.  They continued to use the Remaining Lots and made extensive efforts to obtain the financing to build a home on those lots.   The bankruptcy judge's findings are amply supported by the record and the conclusions  amply supported by Texas law.

## IV.  Conclusion

The bankruptcy court's rulings denying Buckeye's objection to the debtors' claimed homestead exemption and granting the debtors' motion to avoid Buckeye's judicial lien are affirmed and this appeal is dismissed.

SIGNED on June 9, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge